UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HARRY ZEA, RHC LLC, HOLD ON! LLC, 1355 MARLIN DRIVE LLC, 1660 DOLPHIN COURT LLC, 1501 BLUEFIN COURT LLC, PINNACLE ASSET TRUST LLC, BAY CLUB OF NAPLES I LLC, BAY CLUB OF NAPLES II LLC, and THE NAUTILUS NAPLES LLC,

      Plaintiffs,

v.

CITY OF NAPLES, a Florida Municipal Corporation, WILLIAM BARNETT, individually and in his capacity as former Mayor of the City of Naples, and CRAIG MOLE, individually and in his capacity as the Chief Building Official of Naples,

      Defendants,

Case No. 2:22-cv-690-KCD-NPM

## **ORDER**

Defendants City of Naples, William Barnett, and Craig Molé move for summary judgment. (Doc. 130.)[1] Plaintiffs have responded (Doc. 149), making this matter ripe. For the reasons below, Defendants' motion is **GRANTED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Plaintiff Harry Zea is a real estate developer. (Doc. 56 ¶ 15). His fellow plaintiffs are entities he owns or is affiliated with. (*Id.* ¶ 4.) Zea purchased and sought to develop two real estate projects through these entities: the Bay Club properties and the Royal Harbor homes. (*Id.* ¶ 16.) The Bay Club properties "were a set of two existing structures to be converted to mixed-use buildings in Naples' commercial waterfront district." (*Id.* ¶ 17.) The Royal Harbor homes were four single-family residences in the same neighborhood. (*Id.* ¶ 48.)

Both projects received permits and began construction. (*Id.* ¶ 19.) But things did not go smoothly, and they later faced permitting issues. (*Id.* ¶¶ 39, 68, 74.) Zea blames Defendants. He claims City "officials at the highest levels," including the former Mayor (Defendant William Barnett) and building inspector (Defendant Craig Molé), "worked together to drive Zea out of the Naples' real estate market and to force his businesses into bankruptcy so that friends and campaign supporters of the city officials could buy his properties at a discount." (*Id.* ¶ 12.)

Zea now sues under the Equal Protection Clause. According to the complaint, his projects were treated differently from similarly situated properties. (*Id.*) Specifically, he alleges Defendants harbored "personal animus towards" him and they carried out a policy designed to thwart the projects'

2

development. (*Id.* ¶¶ 26-27.) Defendants seek summary judgment under Fed. R. Civ. P. 56. (Doc. 130.)

## II. Legal Standard

"Summary judgment is appropriate when a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019). "And a fact is material if it may affect the outcome of the case under the applicable substantive law." *Toca v. Debonair Props. LLC*, No. 2:23-CV-303-KCD, 2025 WL 2106674 (M.D. Fla. July 28, 2025).

"The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial." *Andrews v. Ciccone*, No. 3:23-CV-88-MMH-SJH, 2025 WL 2508878, at *2 (M.D. Fla. Sept. 2, 2025).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). This requires the nonmovant to "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Alexander as trustee of Franklin Pharmacy, LLC v. Aaron*, No. 3:15-CV-1314-AKK, 2017 WL 11437294, at *1 (N.D. Ala. June 1, 2017); *see also Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 177 (5th Cir. 2016).

## III. Discussion

The Fourteenth Amendment provides, in pertinent part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "The purpose of the [Equal Protection Clause] is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota Cty., Neb.*, 260 U.S. 441, 445 (1923). The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 825 F.2d 367, 369 (11th Cir. 1987).

Zea does not allege discrimination based on race or some other constitutionally protected class. He is instead proceeding on a "class of one" theory, which applies when the claimant "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1032 n.1 (11th Cir. 2008).

To prevail on this theory, Zea must show that his projects were treated differently from other "similarly situated" properties. *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007). "The reason that there is a similarly situated requirement in the first place is that at their heart, equal protection claims, even class of one claims, are basically claims of discrimination." *McDonald v. Village of Winnetka,* 371 F.3d 992, 1009 (7th Cir. 2004). "To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the similarly situated requirement with rigor." *Griffin Indus.*, 496 F.3d at 1207. "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *E & T Realty v. Strickland,* 830 F.2d 1107, 1109 (11th Cir. 1987).

The comparator requirement is rigorous. *E.g.*, *Griffin Indus.*, 496 F.3d at 1207. Zea can't "rely on broad generalities in identifying a comparator." *Leib*, 558 F.3d at 1307. Instead, "[t]he entities being compared must be *prima facie* identical in all relevant respects." *Hybrid Pharma LLC v. Knispel*, No. 24-13095, 2025 WL 1743416, at *4 (11th Cir. June 24, 2025). In the property development context, a valid comparator "would be essentially the same size, have an equivalent impact on the community, and require the same zoning variances." *Griffin Indus., Inc.*, 496 F.3d at 1204; *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).

Zea bears the burden of proof at trial. So to survive summary judgment, he must present evidence of "comparators [that are] identical in all relevant respects" to his failed projects. *Stardust, 3007 LLC v. City of Brookhaven, Ga.*, No. 1:14-CV-03534-ELR, 2016 WL 11544441, at *10 (N.D. Ga. Sept. 29, 2016).

First up is Bay Club. As mentioned, these properties were a pair of mixed-use buildings in Naples' waterfront district. Pertinent here, they were granted a legal nonconforming use that "allowed the building's height to exceed 42 feet." (Doc. 149 ¶ 1.) Defendants claim that none of Zea's proposed comparators held this status, which precludes their relevance here. The Court agrees. Nowhere does Zea contend, much less show, that his comparators were nonconforming. This matters because a nonconforming use impacts what development is allowed on the property. (*See* Naples Code § 46-35.) A

6

nonconforming use can also be forfeited, *see Lewis v. City of Atl. Beach*, 467 So. 2d 751, 755 (Fla. Dist. Ct. App. 1985), which is what Defendants claim happened here to prevent Zea's proposed development. (*See* Doc. 130 at 3 ("The Plaintiff lost non-conforming status by demolishing the top two floors of the Bay Club South Property so that it became a conforming structure[.]")).

Since Bay Club was operating under a nonconforming use permit, which imposed certain restrictions on the property, a comparator would need those same characteristics. *See, e.g.*, *White v. City of Live Oak, Fla.*, No. 3:09-CV-391-J-34JRK, 2010 WL 11623480, at *17 (M.D. Fla. June 8, 2010) (concluding business was "not a valid comparator" where plaintiff stated she did "not know whether the business is a nonconforming use"). Having failed to proffer a similarly situated comparator who was treated differently, Zea's equal protection claim about Bay Club must fail. *See, e.g.*, *Campbell*, 434 F.3d at 1314 (11th Cir. 2006) ("In the zoning context, projects which seek different types of variances are not similarly situated.").

Turning to the Royal Harbor homes, Zea accuses Defendants of withholding building permits. Defendants note that three of the homes had abandoned permits, unlike any of the purported comparators. (Doc. 130 at 14.) Zea largely ignores this point. Although his response brief suggests that his permits had been tolled or extended (Doc. 149 ¶¶ 12-14), this argument is not developed. (*Id.* at 9-20.) Instead, Zea offers generalized and conclusory

7

assertions that his proffered comparators are sufficiently similar. (*Id.* at 11-12.) That's not enough at this stage. It was Zea's responsibility to explain how his comparators were functionally equivalent to his failed projects. "The Court [is] not required to distill an unmade theory of interference on its own." *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 F. App'x 785, 790-91 (11th Cir. 2018); *see Vickery v. Medtronic, Inc.*, 997 F. Supp. 2d 1244, 1253 (S.D. Ala. 2014); *McIntyre v. Eckerd Corp.*, No. CIV.A. 1:06CV0371TWT, 2007 WL 781337, at *4-5 (N.D. Ga. Mar. 5, 2007) (declaring claim abandoned where plaintiff referenced it in her statement of facts but failed to discuss it in the argument section).

The fourth home suffers the same fate. Zea alleges that Defendants refused to reissue a building permit so long as he owned it. And he identifies the home's new owner, who successfully developed the property, as its "exact comparator." (Doc. 56 ¶ 110.) But according to Defendants, the new owner submitted a *completed* permit application while Zea had not. (Doc. 130 at 14.) Zea offers nothing to rebut this point, so he abandoned this claim too. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1336 (M.D. Ala. 2010) (granting summary judgment after finding plaintiff "abandoned the claim by failing to address it substantively"). Without a valid comparator to contrast with the Royal Harbor

homes, Zea's equal protection claims concerning those properties cannot proceed either.

Zea presses several ancillary arguments that warrant brief attention. First, he contends that determining whether an entity is "similarly situated" is a factual question best left to the jury. That's not entirely accurate. "Although determining whether individuals are similarly situated is generally a factual issue for the jury, where there is no genuine issue of material fact that such a comparator does not exist[], summary judgment is appropriate." *Eggleston v. Bieluch*, 203 F. App'x 257, 264 (11th Cir. 2006). Put differently, summary judgment is proper where a purported comparator's characteristics are undisputed yet materially different from the plaintiff. That is the case here—even accepting Zea's proposed comparators, they are not similarly situated as a matter of law.

Zea likewise argues that summary judgment is not appropriate given Defendants' failure to offer expert evidence to rebut his expert report identifying several alleged comparators. (Doc. 149 at 11.) The Court disagrees. A movant may carry its burden on summary judgment by "showing that there is no evidence to prove a fact necessary to the [plaintiff's] case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). So if the facts don't support a claim, the defendant need not offer any rebuttal evidence. *See, e.g., Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993)

9

("[T]he moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show . . . that there is an absence of evidence to support the non-moving party's case."). And Zea's expert testimony does not itself create a genuine issue for trial. *See Williams v. City of Daytona Beach*, No. 6:24-CV-1672-JSS-NWH, 2025 WL 2230053, at *7 (M.D. Fla. Aug. 5, 2025) ("Whether a plaintiff and a purported comparator are similarly situated is a legal conclusion.").

Finally, Zea claims that "comparators [need not] be similar in *precisely how* the project was treated," and suggests that doing so would effectively preclude parties from bringing equal protection claims. (Doc. 149 at 13.) The Eleventh Circuit has held otherwise. "[W]hen plaintiffs in class of one cases challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities must be very similar indeed." *Griffin Indus.*, 496 F.3d at 1205. This is necessary to avoid "subject[ing] nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties." *Leib*, 558 F.3d at 1307.

Zea has not shown that his development projects were similarly situated to the proposed comparators in light of all the factors that would be relevant

10

to an objectively reasonable decisionmaker. This precludes his equal protection claims as a matter of law. It is thus **ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 130) is **GRANTED**.

2. The Clerk is directed to enter judgment for Defendants, terminate any pending motions and deadlines, and close the case.

**ENTERED** in Fort Myers, Florida on September 23, 2025.

Kyle C. Dudek
United States District Judge